UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| ANSON B. MCFAUL, | ) | |
| Institutional ID No. 1006030, | ) | |
| SID No. 5705111, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. |
| | ) | 5:09-CV-165-BG |
| DANIEL VALENZUELA, | ) | ECF |
| Chaplain-Preston Smith Unit | ) | |
| in his Individual and Official Capacity | ) | |
| *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## REPORT and RECOMMENDATION

*Pro se* plaintiff Anson B. McFaul, proceeding *in forma pauperis*, filed the instant civil rights complaint pursuant to the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc-1; Texas Religious Freedom and Restoration Act ("TRFRA"), TEX. & REM. CODE ANN. § 110.003; and 42 U.S.C. § 1983. McFaul names as defendants Daniel Valenzuela, Chaplain for the Preston E. Smith Unit ("Smith Unit") of the Texas Department of Criminal Justice-Institutional Division ("TDCJ"); Bill Pierce, Director of TDCJ's Chaplaincy Department; Gary Griggs, Assistant Warden of the Smith Unit; Richard Vogelgesang, Warden of the Smith Unit; and Brad Livingston, Executive Director of TDCJ (collectively termed "Defendants," unless referred to individually). The Defendants are sued in their individual and official capacities. McFaul asserts that the Defendants violated his constitutional and statutory rights by not allowing him to obtain the following religious devotional items: a bone skull necklace, a sun triskele pendant, and a mirrored black pendant. McFaul states that he was told he could not have the items because they cost more than $25. McFaul claims that he was not allowed to purchase the items because,

unlike other prisoners who are allowed to have items used in their respective religions, he practices the "non-mainstream" religion of Neo-Paganism. McFaul also asserts an equal protection claim, alleging that prisoners of other faiths are allowed to have religious items that cost more than $25.

On October 22, 2009, the undersigned conducted a hearing pursuant to *Spears v. McCotter*, 766 F.2d 179, 181-82 (5th Cir. 1985), and before the hearing McFaul consented to the Magistrate Judge exercising jurisdiction over the case. After considering the allegations in McFaul's complaint and his testimony under oath, the court found that he had stated claims sufficient to require an answer or other responsive pleading by the Defendants. After the Defendants answered the complaint, the court offered them the opportunity to consent to the Magistrate Judge exercising jurisdiction over the case. The Defendants declined to consent.

The parties conducted discovery, and the Defendants have filed a motion for summary judgment, (Docket No. 45). The undersigned has disposed of all non-dispositive issues. Pursuant to the District Court's order that was entered on July 30, 2009, the undersigned files this Report and Recommendation with findings of fact, conclusions of law, and recommendation for the disposition of this case.

**I.     SUMMARY JUDGMENT STANDARD**

Under Fed. R. Civ. P. 56(c), the court must enter summary judgment if the pleadings and evidence show there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the movant for summary judgment produces evidence showing that there is no genuine issue of material fact, the nonmovant must direct the court's attention to evidence in the record sufficient to establish that there exists a genuine issue of material fact that necessitates

a trial. *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996). If the nonmovant fails to make a showing on an element for which he bears the burden of proof, the movant is entitled to judgment as a matter of law. *Celotex Corp.*, 477 U.S. at 322. Although the court draws all inferences in favor of the nonmovant, "mere conclusory allegations are not competent summary judgment evidence, and such allegations are insufficient, therefore, to defeat a motion for summary judgment." *Eason*, 73 F.3d at 1325.

## II.     DEFENDANTS' SUMMARY JUDGMENT MOTION

The Defendants argue that they are entitled to summary judgment on McFaul's RLUIPA and TRFRA claims because he has not produced evidence that TDCJ's policies impose a substantial burden on the free exercise of his religious rights. The defendants also assert that summary judgment is appropriate on the RLUIPA and TRFRA claims because TDCJ's policies are the least restrictive means of furthering compelling governmental interests. The defendants contend that the court should grant summary judgment in their favor on McFaul's First Amendment claim because the affidavit of Robert Eason, who is the TDCJ Region IV Director, shows that the prison regulations are reasonably related to penological interests. The defendants argue that they are entitled to summary judgment on McFaul's equal protection claim because he has not carried his burden of producing evidence of purposeful discrimination. Finally, the defendants argue that McFaul is not entitled to compensatory damages and that they are shielded by qualified immunity.

## III.    DISCUSSION

### A.     RLUIPA and TRFRA

McFaul alleges that defendants violated his right to free exercise of religion under the RLUIPA, 42. U.S.C. §2000cc-1, and the TRFRA, TEX. CIV. PRAC. & REM. CODE ANN. § 110.003. The RLUIPA provides that "no government shall impose a substantial burden on the

3

religious exercise of a person residing in or confined by an institution . . . even if the burden results from a rule of general applicability, unless the government demonstrates that the imposition of the burden on that person" is in furtherance of a compelling interest and is the least restrictive means of furthering that compelling government interest. 42 U.S.C. § 2000cc-1(a). The TRFRA states that "a government agency may not substantially burden a person's free exercise of religion," unless the government agency demonstrates that the application of the burden to the person is in furtherance of a compelling governmental interest and is the least restrictive means of furthering that interest. TEX. CIV. PRAC. & REM. CODE ANN. § 110.003(a) and (b). Thus, under both the RLUIPA and TRFRA, the burden is on the plaintiff to demonstrate that the government has placed a substantial burden on his right to freely exercise his religion.

The Fifth Circuit has defined "substantial burden" in the RLUIPA as follows:

> [A] government action or regulation creates a 'substantial burden' on a religious exercise if it truly pressures the adherent to significantly modify his religious behavior and significantly violate his religious beliefs. . . . [T]he effect of a government action or regulation is significant when it either (1) influences the adherent to act in a way that violates his religious beliefs, or (2) forces the adherent to choose between, on the one hand, enjoying some generally available, non-trivial benefit, and, on the other hand, following his religious beliefs.

*Adkins v. Kaspar*, 393 F.3d 559, 570 (5th Cir. 2004) (citations omitted). This inquiry "requires a case-by-case, fact-specific inquiry to determine whether the government action or regulation in question imposes a substantial burden." *Id.* at 571.

If the plaintiff satisfies the substantial burden threshold requirement, the burden shifts to the government to demonstrate that the challenged policies are the least restrictive means of furthering a compelling governmental interest. *Baranowski v. Hart*, 486 F.3d 112, 124 (5th Cir. 2007). In making this determination, the court must give "due deference to the experience and

4

expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of costs and limited resources." *Id.* at 125 (internal quotation omitted). The RLUIPA "is not meant to elevate accommodation of religious observances over the institutional need to maintain good order, security, and discipline or to control costs." *Id.*

McFaul complains that he is unable to possess a bone skull necklace, a sun triskele pendant, and a mirrored black pendant. McFaul has not put forth any evidence to demonstrate that the denial of these items "either (1) influences [him] to act in a way that violates his religious beliefs, or (2) forces [him] to choose between, on the one hand, enjoying some generally available, non-trivial benefit, and, on the other hand, following his religious beliefs." *Adkins*, 393 F.3d at 570; (*see* Doc. 62, App. at 3; Doc. 64). Instead, McFaul presents evidence that his religion requires it adherents to swear to silence about its "mysteries." (Doc. 64). McFaul may not hide behind a veil of secrecy. If he wishes for the court to order the TDCJ to set aside its policies, he must present evidence to establish why TDCJ's policies substantially burden his free exercise of religion. *See Celotex Corp.*, 477 U.S. at 322 (requiring a nonmovant to present evidence to support an element for which he carries the burden of proof). Accordingly, summary judgment in favor of the Defendants is appropriate for McFaul's claims under the RLUIPA and TRFRA because he has not met his burden to show that the TDCJ's denial of the religious items substantially burdens his free exercise of religion. 42. U.S.C. §2000cc-1(a); TEX. CIV. PRAC. & REM. CODE ANN. § 110.003(a) and (b). Because McFaul did not carry his burden to show a "substantial burden," the court need not address whether TDCJ's policies are the least restrictive means of furthering a compelling government interest.

5

### B. 42 U.S.C. § 1983

Section 1983 provides for liability against any person who, acting under color of law, deprives an individual of "any rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983. It creates a cause of action for the infringement of rights guaranteed by federal law. *Maine v. Thiboutot*, 448 U.S. 1, 4, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980).

#### 1. First Amendment Free Exercise of Religion

When a prison regulation impinges on an inmate's free exercise of religion, "'the regulation is valid if it is reasonably related to legitimate penological interests.'" *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987) (quoting *Turner v. Safely*, 482 U.S. 78, 89, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987)). In making this determination the court must consider: (1) whether a valid and rational connection exists between the prison regulation and the legitimate governmental interest put forward to justify it; (2) whether there are alternative means of exercising the right that remain open to prison inmates; (3) the impact of the accommodation on prison guards, other inmates, and the allocation of prison resources generally; and (4) whether there are "ready alternatives" to the regulation in question. *Freeman v. Texas Dep't of Criminal Justice*, 369 F.3d 854, 860 (5th Cir. 2004). The court's task is to determine whether the government has a legitimate and neutral objective for the regulation at issue and whether the regulation is rationally related to the objective. *Id.* The Fifth Circuit has held that the first factor is the controlling question posed in these cases; the other factors merely help a court determine if the connection is logical. *Scott v. Mississippi Dep't of Corr.*, 961 F.2d 77, 81 (5th Cir. 1992).

Furthermore, neither *Turner* nor *O'Lone* "require a court to weigh evenly, or even consider, each of these factors." *Scott*, 961 F.2d at 80.

Analysis under the first factor often turns on the neutrality of the policy. *See Mayfield v. Texas Dep't of Corr.*, 529 F.3d 599, 608-09 (5th Cir. 2008) (vacating district court's finding of summary judgment in favor of defendants because there was an issue of material fact as to the neutrality of the policy). "Requiring neutrality ensures that the prison's application of its policy is actually based on the justifications it purports, and not something more nefarious." *Id.* at 609. Under this prong of the analysis, in the absence of some exaggerated security issues, courts generally defer to prison administration when the policy is related to prison security concerns. *Id.* at 611. The challenged policy should not survive scrutiny under the first prong of the analysis "if its relationship to the government objective is 'so remote as to render the policy arbitrary or irrational.'" *Freeman*, 369 F.3d at 861 (quoting *Turner*, 482 U.S. at 89-90).

McFaul challenges TDCJ's policy that he is not allowed to posses a religious medallion that costs more than $25 and that is not approved for a prisoner. (Doc. 47, App. F at 127-28). The Defendants present evidence to show that TDCJ's policy is reasonably related to penological interests. In his affidavit, Eason states that Prison officials have pre-approved the "Thor's hammer" pendant and "star pentagram" pendant for McFaul's Neo-Pagan religion. (Doc. 47, App. E at 107). Eason explains that the governmental interests behind allowing a prisoner to possess only these pre-approved medallions that cost less than $25 are the following: uniformity, discipline, order, safety and security of the institution, and consideration of costs and limited resources. (*Id.* at 106). Eason asserts that prison officials did not allow McFaul to have the mirrored black pendant because it could be ground into shards or powder and used to hurt guards or other

7

inmates. (*Id.*). Eason states that prison offcials prefer that inmates use religious neckwear that is uniform in size because allowing multiple variations of religious medallions would make it difficult for guards to determine if an inmate was in possession of a contraband item. (*Id.* at 107). An additional reason McFaul was not allowed to have the bone skull necklace or the sun triskele pendant was to prevent him from using the unique items to trade for contraband. (*Id.* at 107).

The TDCJ's penological interests are rationally related to the regulation because the use of pre-approved pendants that cost less than $25 allows the TDCJ to maintain the safety of the institution, reduce trafficking of contraband, and reduce time and costs in identifying contraband. McFaul has not presented evidence that contradicts Eason's affidavit, and, thus, there is no genuine issue as to the penological interests advanced by TDCJ's policies. Furthermore, McFaul has not presented evidence that the policy was applied in a non-neutral way. *See Mayfield*, 529 F.3d at 608-09 (explaining that evidence of the government applying the policy in a non-neutral way creates a material issue of fact). Accordingly, the first factor weighs in favor of the Defendants.

The appropriate analysis under the second factor is "not whether the inmates have been denied specific religious accommodations, but whether, more broadly, the prison affords the inmates opportunities to exercise their faith." *Freeman*, 369 F.3d at 861. Thus, the court must determine "whether the regulation entirely stifles the prisoner's religious expression." *Scott*, 961 F.2d at 81. Prisoners are permitted to wear a watch, wedding ring, and one item of neckwear. (Doc. 47, App. E at 107). This policy includes religious medallions, and prisoners are allowed to purchase items provided that the items have been approved by the TDCJ. (*Id.* at 106-07). McFaul is allowed to possess two religious medallions that have been approved for the Neo-Pagan faith. (*Id.* at 107). Thus, the second factor weighs in favor of the Defendants.

As for the third factor, the guards spend less time ascertaining whether an item is contraband when religious medallions are uniform in size. (Doc. 47, App. E at 107). McFaul has not put forth evidence of "ready alternatives," but even if he had, the weight of the other three factors shows that the regulation is valid because it is reasonably related to legitimate penological interests. *O'Lone*, 482 U.S. at 349. Accordingly, the district court should grant summary judgment in favor of the Defendants on McFaul's First Amendment claim because there is no genuine issue of material fact and the Defendants are entitled to a judgment as a matter of law. *Celotex Corp.*, 477 U.S. at 322.

### 2. Fourteenth Amendment Equal Protection

A plaintiff bringing an equal protection claim "must prove purposeful discrimination resulting in a discriminatory effect among persons similarly situated." *Adkins*, 393 F.3d at 570. The equal protection guarantees of the Fourteenth Amendment require only that prison officials provide prisoners "reasonable opportunities" to exercise religious freedom guaranteed by the constitution. *Baranowski*, 486 F.3d at 123.

McFaul contends that prisoners who practice other faiths are permitted to purchase medallions that cost more than $25. McFaul's evidence is that prison officials have approved (1) a Wiccan medallion that costs $25.75, and (2) a medallion in excess of $25 for another prisoner. (Doc. 62, App. at 2, 28). However, McFaul does not present evidence as to the cost of the other prisoner's medallion or his religion. (*See id.* at 2). The 75 cent difference between the Wiccan medallion and the $25 limit is a *de minimis* difference and does not constitute evidence of purposeful discrimination. Thus, McFaul has failed to meet his burden of providing evidence to show purposeful discrimination among persons who are similarly situated. *Adkins*, 393 F.3d at 570.

9

Accordingly, summary judgement in favor of the Defendants is appropriate for this claim. *Celotex Corp.*, 477 U.S. at 322 (explaining that if the nonmovant fails to make a showing on an element for which he bears the burden of proof, the movant is entitled to judgment as a matter of law).

### C. Damages and Qualified Immunity

Because the defendants are entitled to summary judgment in their favor on all of McFaul's claims, the court need not address whether McFaul may seek compensatory damages or whether the defendants are shielded by qualified immunity.

## IV. RECOMMENDATION

Based upon the foregoing discussion, this court recommends that the district court grant the Defendants' motion for summary judgment.

## V. RIGHT TO OBJECT

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Serv. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

Dated: September 14, 2010.

_____
NANCY M. KOENIG
United States Magistrate Judge